UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
JUAN PACCHA,

                        Plaintiff,

    -against-

APS ELECTRIC, INC., MIKHAIL MIKHAYLOV,
and JANE DOE a/k/a GIANA,

                       Defendants.
------------------------------------------------------------------X

Case No.: 1:23-cv-2075 (NRM) (MMH)

**DECLARATION OF GENADI TANFILOV IN SUPPORT OF MOTION TO DISMISS & <u>COMPEL ARBITRATION</u>**

**GENADI TANFILOV** declares the following under penalty of perjury:

    1. I am the Vice President of Defendant APS Electric Inc. (hereinafter "APS") since approximately 2015.

    **i. Defendants' Employment Policies and Procedures.**

    2. In or about April 2017, it has been APS' policy to have employees sign arbitration agreements as a condition of the employees' employment.

    3. When a new employee commences employment with APS, they are presented with – among other things – an employment application, I-9 form, W4 form, an Employee Handbook together with its acknowledgment, and an Arbitration Agreement.

    4. Though each employee is required to fill out I-9 and W4 forms upon commencing employment, the employees are not required nor pressured to sign the employment handbook receipt and acknowledgment nor the arbitration agreement if they have questions about it or wish to have the time to read it to understand it better before signing.

    5. Together with Mikhail Mikhaylov, myself, and – from time to time, office managers – we are tasked with communicating with the employees and obtaining the requisite aforementioned forms, acknowledgments, and agreements.

6. Furthermore, before hiring any employee, an interview is conducted in English to determine whether the employee is qualified to work for APS.

7. If an employee does not speak basic English, they are not qualified to work at APS, as communication is key to ensure safety.

8. Therefore, I know that any employee working at APS knows the English language and speaks it well.

**ii. The Process by Which Plaintiff Signed His Arbitration Agreement.**

9. After APS instituted the employee handbooks and arbitration agreements in April 2017, it became our practice and policy to present these acknowledgments and agreements to every single employee, whether they are new hires or current employees.

10. In fact, I was among those responsible for presenting the acknowledgments and agreements to Plaintiff and other employees.

11. All employees hired after April 2017 were presented with the employee handbooks and arbitration agreements upon being hired.

12. Because Plaintiff was an employee before we created the employee handbooks and instituted the relevant employment policies, including the arbitration agreement, Plaintiff was presented with the employee handbook and arbitration agreement after commencing his employment with APS when it implemented these policies.

13. Generally speaking, every new employee was personally given the documents referenced in ¶¶ 4-5, *supra*, including the arbitration agreements.

14. Whenever I hand out the above-referenced documents to new employees, I explain that these "work documents" are to be read and signed pursuant to company policy.

15. Usually, new employees read the documents and sign them, including the arbitration agreements.

16. Sometimes, new employees do not understand the documents and ask for an explanation.

17. Whenever I was asked for an explanation, I provided one to the best of my abilities, and stated – with respect to the arbitration agreement – that arbitration is a private way of resolving employment disputes without going to court, which is faster, cheaper, and better.

18. Other times, new employees stated that they do not understand the documents and wish to ask somebody they know outside of APS to explain it to them, which I and others always allowed.

19. In other instances, new employees simply ask for a few days to review the documents before signing them, which – again – I and others also always allowed.

20. I never insisted that any employee sign the documents right away, nor have I ever objected to any employees taking the time to review the documents before signing them.

21. Generally speaking, if I do not receive signed acknowledgments and agreements back within three (3) days, it would be my practice to ask the employee about the forms and inform the employee that I need the signed agreement back.

22. Regardless of what happens, every new employee eventually returns a signed arbitration agreement.

23. With respect to existing employees – such as the Plaintiff – he was not presented with an employee handbook and arbitration agreement upon his hire, as those policies were not yet in place when he was initially hired.

24. Instead, Plaintiff was presented with the employee handbook and arbitration agreement to review and sign at a company-wide meeting held on April 17, 2023.

25. In fact, on Wednesday, April 12, 2017, APS issued a "Notice of Company Meeting" to all existing employees – including the Plaintiff – scheduling a company meeting for Monday, April 17, 2017 at 4:30 PM at 172 Madison Avenue, New York, NY, a job site in which virtually all APS employees worked at during that time.  See copy of notice annexed hereto as **Exhibit "A."**

26. At that meeting, all of APS' existing employees – including the Plaintiff, who was present – were presented with the APS employee handbook and the arbitration agreements.

27. Just like with the new employees, some signed right away, others had questions and wanted an explanation from us, others had questions and wanted to ask someone outside of APS, and others asked for a few days to review the documents themselves.

28. Regardless of what happened, every existing employee eventually returned – and Plaintiff did return – signed arbitration agreements.

29. With respect to the Plaintiff, he did not sign the arbitration agreement the day of the meeting, nor did he sign the company meeting sign-in sheet that all of the other employees signed. See copy of sign-in sheet annexed hereto as **Exhibit "B."**

30. However, as per our policy when employees take the agreement home if they do not sign right away, I repeatedly followed up with the Plaintiff about returning the signed agreement pursuant to our policies.

31. Eventually, on June 6, 2017, less than two months after the company meeting which he attended, the Plaintiff returned the signed arbitration agreement.

32. Crucially, when the Plaintiff returned the arbitration agreement to me, it was already signed. See copy of Plaintiff's executed arbitration agreement annexed hereto as **Exhibit "C."**

33. In other words, I was not present when the arbitration agreement was executed.

**iv. English and Spanish.**

34. Though I speak a little Spanish, I normally communicate with the employees of APS in English.

35. Plaintiff's dominant language is undoubtedly Spanish.

36. However, Plaintiff – and all employees – communicate with management and other employees in English.

37. As such, all employees – including Plaintiff– are required to speak basic English in order to qualify for a position at APS.

38. The Plaintiff has a sufficient understanding of the English language such that we, as management, are able to communicate with him in English and he is able to respond in English.

I declare under penalty of perjury that the foregoing is true and correct. Executed on October  06  , 2023.

_____
**GENADI TANFILOV**