UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

JUAN PACCHA

                              Plaintiff,

-against-                                             Index No.: 1:23-cv-2075 (NRM) (MMH)


APS ELECTRIC, INC., MIKHAIL
MIKHAYLOV,  and JANE DOE a/k/a
GIANA,

                              Defendants.


**<u>MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS AND TO COMPEL ARBITRATION</u>**


Michael Taubenfeld, Esq.
**FISHER TAUBENFELD LLP**
225 Broadway, Suite 1700
New York, New York 10007
Phone: (212) 571-0700
*Attorneys for Plaintiff*

*Date of Service: December 7, 2023*

**TABLE OF CONTENTS**

Table of Contents ....................................................................................................... i

Table of Authorities ................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................. 1

STATEMENT OF FACTS .......................................................................................... 2

    1.  Factual and Procedural Background .................................................................. 2

        a.  Background of the Case ................................................................................ 2

        b.  Arbitration Agreement................................................................................. 2

        c.  Plaintiff's Means ......................................................................................... 5

ARGUMENT ............................................................................................................... 5

  I.  The Court Should Decline to Compel Arbitration Because There Was No Meeting of the Minds Between the Parties............................................................................ 5

  II.  If the Court Finds the Arbitration Agreement Valid, Some Terms are Unconscionable and Must be Severed .................................................................................................. 9

        a.  The Court Should Sever the Term Requiring Plaintiff to Pay Arbitration Fees ..................................................................................... 10

        b.  The Court Should Sever the Term Shortening the Relevant Statutes of Limitations ....................................................... 11

CONCLUSION ......................................................................................................... 16

**TABLE OF AUTHORITIES**

<u>Cases</u>

<u>14 Penn Plaza LLC v. Pyett</u>
556 U.S. 247 (2009).................................................................................................. 13

<u>Arazi v. Cohen Bros. Realty Corp.</u>
No. 1:20-CV-8837-GHW, 2022 WL 912940 (S.D.N.Y. Mar. 28, 2022) ............................... 15

<u>Barrows v. Brinker Rest. Corp.</u>,
36 F.4th 45 (2d Cir. 2022) ............................................................................................. 8

<u>Brady v. Williams Cap. Grp., L.P.</u>,
64 A.D.3d 127, 878 N.Y.S.2d 693 (2009), aff'd as modified, 14 N.Y.3d 459, 928 N.E.2d 383
(2010) ........................................................................................................................... 9

<u>Brennan v. Bally Total Fitness</u>
198 F. Supp. 2d 377 (S.D.N.Y. 2002) .......................................................................... 6,8

<u>Brower v. Gateway 2000, Inc.</u>
246 A.D.2d 246, 676 N.Y.S.2d 569 (1998) .................................................................... 9

<u>Castellanos v. Raymours Furniture Co., Inc.</u>
291 F. Supp. 3d 294 (E.D.N.Y. 2018) (Bianco, J.) ........................................................ 12

<u>Crespo v. Kapnisis</u>
No. 21-CV-6963 (BMC), 2022 WL 2916033 (E.D.N.Y. July 25, 2022) ........................ 9,10,12

<u>Doe v. Bloomberg, L.P.</u>
36 N.Y.3d 450 (2021) .................................................................................................. 14

<u>Griffin v. Sirva, Inc.</u>
29 N.Y.3d 174 (2017)................................................................................................... 15

<u>In re Currency Conversion Fee Antitrust Litig.</u>
265 F. Supp. 2d 385, 411 (S.D.N.Y. 2003) ................................................................... 10

<u>Int'l Fidelity Ins. v. Rockland</u>
98 F.Supp.2d 400, (S.D.N.Y.2000).............................................................................. 11

<u>Kravar v. Triangle Servs., Inc.</u>
No. 1:06-CV-07858-RJH, 2009 WL 1392595 (S.D.N.Y. May 19, 2009) .......................... 12

<u>Lavin v. Briefly Stated, Inc.</u>
No. 09 CIV. 8610 (CM)(FM), 2011 WL 1334845 (S.D.N.Y. Mar. 31, 2011) ...................... 11

Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.
715 F.3d 102, 109 (2d Cir. 2013) ................................................ 15

Nakahata v. New York-Presbyterian Healthcare Sys., Inc.
723 F.3d 192 (2d Cir. 2013) ...................................................... 12

N. Am. Foreign Trading Corp. v. Mitsui Sumitomo Ins. USA, Inc.
499 F. Supp. 2d 361, 380 (S.D.N.Y. 2007), on reconsideration in part, No. 05 CIV. 4807 (SAS),
2007 WL 2873926 (S.D.N.Y. May 15, 2007), rev'd, 292 F. App'x 73 (2d Cir. 2008), and aff'd in
part, 292 F. App'x 73 (2d Cir. 2008)............................................ 11

Pfeifer v. Fed. Exp. Corp.
297 Kan. 547 P.3d 1226 (2013) ................................................ 13,14

Ragone v. Atl. Video at Manhattan Ctr.
595 F.3d 115 (2d Cir. 2010) .................................................... 13

Register.com, Inc. v. Verio, Inc.
356 F.3d 393 (2d Cir. 2004)...................................................... 6

Rodriguez v. Raymours Furniture Co.
225 N.J. 343 (2016)............................................................. 13,16

Schreiber v. K-Sea Transp. Corp.
9 N.Y.3d 331 (2007) ............................................................ 10

Solis v. ZEP LLC
No. 19CV4230 (JGK), 2020 WL 1439744 (S.D.N.Y. Mar. 24, 2020 ................. 6,8,9

Specht v. Netscape Commc'ns Corp.,
306 F.3d 17 (2d Cir. 2002)...................................................... 5

Victorio v. Sammy's Fishbox Realty Co., LLC
No. 14 CIV. 8678 CM, 2015 WL 2152703 (S.D.N.Y. May 6, 2015)................... 9

York v. Ass'n of Bar of City of New York
286 F.3d 122 (2d Cir. 2002)..................................................... 15

**Rules and Statutes**

FLSA, 29 U.S.C. § 255...........................................................2,3,4,11,12

NJLAD, N.J.S.A. 10 ............................................................. 13,15

NYCHRL....................................................................................................2,4,12,13,14,15,16
   §8-502(d) ..................................................................................................... ......3

NYLL ....................................................................................................... 2,12
   § 198 ...................................................................................................... 3,4,11
   § 663 ...................................................................................................... 7,12

NYSHRL, NY EXEC § 297...............................................................................2,11,13,14,15,16

## PRELIMINARY STATEMENT

Defendants employed Plaintiff for 17 years.  During Plaintiff's employment, Defendants consistently failed to pay him properly under federal and New York State law.  Plaintiff then got hurt on the job, and Defendants fired him because of that injury.  Defendants now want to force Plaintiff into arbitration based on an arbitration agreement that he could not read, which Defendants forced him to sign on the spot, and which Defendants misrepresented the contents to him.  They also want him to be subject to truncated statute of limitations that will prevent him from fully vindicating his rights and to potentially to pay arbitrator fees.  The Court should decline Defendants' request.

Plaintiff commenced a case against Defendants, his former employers, alleging wage and hour and discrimination claims under federal and New York State law. Defendants assert that Plaintiff must arbitrate his claims. However, the parties' arbitration agreement is unenforceable here where there was no "meeting of the minds" necessary for a binding contract. Plaintiff spoke and read limited English when he signed the agreement, which Defendants did not give him an opportunity to get translated. Defendants also misrepresented the agreement to him, claiming that the agreement was about Plaintiff starting a company.  Accordingly, Plaintiff did not know what he was signing and therefore there was no meeting of the minds.

Even if the court does find that the arbitration agreement Plaintiff signed is binding, there are nevertheless several terms of the agreement which are unconscionable and must be struck.  In particular, the agreement could potentially require Plaintiff to pay onerous fees for the arbitration. Further, the shortening of the statute of limitations deprives Plaintiff of his statutory rights. Accordingly, these provisions should be stricken.

## STATEMENT OF FACTS

1. **Factual and Procedural Background**.

    a) **Background of the Case.**

        Plaintiff worked for Defendants as a mechanic for sixteen years. DE1 ¶ 27. Throughout Plaintiff's employment, he regularly worked more than 40 hours per week. DE1 ¶¶ 31-32. Despite Plaintiff's working overtime hours, Defendants failed to pay him time and a half for all hours he worked above 40 per week, and also failed to provide him with proper wage statements. DE 1 ¶ ¶33-39. After Plaintiff was injured at work on June 3, 2021, he required time off and physical therapy to recover. DE 1 ¶¶40-42. While Plaintiff was still undergoing physical therapy, Defendants terminated him. DE 1 ¶¶45-49. In March 2023, Plaintiff brought claims under the Fair Labor Standards Act ("FLSA"), the New York Labor Law ("NYLL"), the New York State Human Rights Law ("NYSHRL"), and the New York City Human Rights Law ("NYCHRL") against his former employer for failure to pay wages and provide pay statements, as well as for discrimination and retaliation on the basis of disability.

    b) **Arbitration Agreement.**

        It appears that Plaintiff signed an arbitration agreement written in English in 2017. Def. **Ex. C, Arbitration Agreement.** Plaintiff, who has an 11th grade education, had very limited English reading/writing skills when he signed the agreement and could not read or understand more than 20% of regular English text. Plaintiff's Decl. ¶¶ 5-8. Plaintiff was not alone in his extremely limited English-speaking abilities and many of Defendants' employees did not speak or read English fluently. Plaintiff's Decl. ¶¶10-11. In fact, Plaintiff could not even read an English newspaper. Plaintiff's Decl. ¶ 7. Nor did Plaintiff understand legal terms, including the term "statute of limitations." Plaintiff's Decl. ¶8. At that time, he would have needed any legal document translated into Spanish to understand it. Plaintiff's Decl. ¶ 5-8. Despite Plaintiff's

language limitations, Defendants never provided Plaintiff with a version of the agreement in his native language, Spanish. Plaintiff's Decl. ¶ 16, 26.

Instead, Defendant Giana presented the agreement to Plaintiff during a shift and told him he had to sign that day. Plaintiff's Decl. ¶ 11-18. Defendant Giana misrepresented the contents of the agreement to Plaintiff, saying that because of his immigration status, he needed to open a business to be able to work for Defendants, and needed to sign the agreement to open the business. Plaintiff's Decl. ¶ 15. Defendant Giana also told Plaintiff that he could not continue working for Defendants without signing the arbitration agreement. Plaintiff's Decl. ¶ 17. Defendant Giana did not explain the terms of the agreement to Plaintiff or give him a chance to take it home or have it translated. Instead, Defendant Giana demanded that he sign it right then during his shift.  Plaintiff's Decl. ¶ 11-18. Plaintiff was not aware that the agreement affected his rights and did not understand the impact it could have on his ability to bring litigation against his employer. Plaintiff's Decl. ¶ 18, 20.

Under the arbitration agreement, Plaintiff is required to arbitrate various employment-related claims against Defendants before the ADR Systems of America. Def. Exhibit C, ¶ 1. Under the agreement, all claims must be brought within six months rather than the far-longer statutory statutes of limitations for employment law cases. Def. Exhibit C, ¶ 5. Specifically, the statutes of limitations for bringing claims under the statutes at issue here range from three years to six years. See FLSA, 29 U.S.C. § 255 (3 years if violation is willful); NYLL § 198 (six years);and NYCHRL, New York City Administrative Code, §8-502(d) (three years). Further, under the agreement, all arbitration fees are split equally between Defendants and Plaintiff, unless a determination is made that Plaintiff was Defendants' employee, in which case Defendants will cover all fees aside from the first $1,000.00. Def. Exhibit C, ¶ 2. According to the ADR Systems of America fee schedule for arbitration published on their website, filing and

administrative fees alone amount to $1,400. Exhibit 1. Under the arbitration agreement, Plaintiff is required to arbitrate various employment-related claims against Defendants before the ADR Systems of America. Def. Exhibit C, ¶ 1. Under the agreement, all claims must be brought within six months rather than the far-longer statutory statutes of limitations for employment law cases. Exhibit 1, ¶ 5. Specifically, the statutes of limitations for bringing claims under the statutes at issue here range from three years to six years. See FLSA, 29 U.S.C Code. § 255 (3 years if violation is willful); NYLL § 198 (six years);and NYCHRL, New York City Administrative Code, §.8-502(d) (three years). Further, under the agreement, all arbitration fees are split equally between Defendants and Plaintiff, unless a determination is made that Plaintiff was Defendants' employee, in which case Defendants will cover all fees aside from the first $1,000.00. Def. Exhibit C, ¶ 2. According to the ADR Systems of America fee schedule for arbitration published on their website, filing and administrative fees alone amount to $1,400. **Exhibit 1** to the Taubenfeld Decl. "Fee Schedule." Plaintiff could also be responsible for half of the costs of renting a hearing room and paying for the arbitrator's travel and lodging, and would also be responsible for half of the arbitrator's compensation, which is likely to be the largest expense, where arbitrators can be compensated as much as $15,000 per day. Trends in Arbitrator Compensation, Dispute Resolution Magazine Spring 2017 p. 8-11, Deborah Rothman, attached hereto as **Exhibit 2.**

,Plaintiff could also be responsible for half of the costs of renting a hearing room and paying for the arbitrator's travel and lodging, and would also be responsible for half of the arbitrator's compensation, which is likely to be the largest expense, where arbitrators can be compensated as much as $15,000 per day. Trends in Arbitrator Compensation, Dispute Resolution Magazine Spring 2017 p. 8-11, Deborah Rothman, attached as **Exhibit 2** to the Taubenfeld Decl.

4

c) **Plaintiff's Means.**

 After Plaintiff got hurt in June 2021, he was out of work until March 2022. Plaintiff's Decl. ¶ 28. At his current position, he makes $35 per hour and usually works 40 hours per week, making $4,500 per month after taxes. Plaintiff's Decl. ¶ 28. Plaintiff pays $1,000 per month in rent, college tuition for his daughter, amounting to $4,500 per four-month semester or $1,125 per month, and has also had the unexpected cost of hospital bills for his wife's cancer treatments, which are currently approximately $130 a month. Plaintiff's Decl. ¶ 28 Plaintiff pays invoices for credit card debt of about $400 per month and sends about $200 per month home to his family in Ecuador. Plaintiff's Decl. ¶ 28 He pays about $200 per week for food costs, and $34 per week on transportation. Plaintiff's Decl. ¶ 28 Plaintiff's utility costs range from $380-$535. Plaintiff is therefore left with a few hundred dollars per month for emergencies and savings, and it would be very difficult for him to afford hundreds or thousands of dollars in arbitration costs. Plaintiff's Decl. ¶ 28

## <u>ARGUMENT</u>

**I. The Court Should Decline to Compel Arbitration Because There Was No Meeting of the Minds Between the Parties.**

 The Court should deny Defendants' motion to compel arbitration because Plaintiff did not understand the English-language arbitration agreement, Defendants misrepresented its contents, and also did not give him the opportunity to have it reviewed.  New York law governs the interpretation of arbitration agreements. <u>Specht v. Netscape Commc'ns Corp.</u>, 306 F.3d 17, 26 (2d Cir. 2002) ("The determination of whether parties have contractually bound themselves to arbitrate a dispute" is "a determination involving interpretation of state law") Under New York State law, a party seeking enforcement of an arbitration agreement must prove by a preponderance of the evidence that all the elements necessary to form a valid contract are met, including "mutual assent and intent to be bound." <u>Solis v. ZEP LLC</u>, No. 19CV4230 (JGK), 2020 WL 1439744, at *4

(S.D.N.Y. Mar. 24, 2020) (citing Register.com, Inc. v. Verio, Inc., 356 F.3d 393, 427 (2d Cir. 2004)). A binding contract requires "a meeting of the minds of the parties, and if there is no meeting of the minds on all essential terms, there is no contract." Solis at *4.

A party who is not literate in the language of an agreement "will not be bound by a contract not written in a language in which the party is literate…if the party, by no fault of his own, either had the contract misrepresented or the party did not have an opportunity to have the contract translated." Solis, 2020 WL 1439744 at *4. Arbitration agreements have been found unenforceable where they are signed in circumstances where non-English-speaking employees feel pressured to sign "on the spot" or else forfeit their jobs or paycheck. Id. at *5, *6. Generally, "high pressure tactics that coerce an employee's acceptance of onerous terms, may be sufficient to show that an employee lacked a meaningful choice" regarding whether to sign the arbitration agreement. Brennan v. Bally Total Fitness, 198 F. Supp. 2d 377, 382 (S.D.N.Y. 2002).

There was no meeting of the minds between the parties here.  Although Plaintiff spoke and read very limited English, he could not read the arbitration agreement. Plaintiff's Decl. ¶ 5. As a result, Plaintiff did not fully comprehend the effect of the agreement and Defendants not only misled Plaintiff as to its contents but deprived him of the opportunity to have it translated by requiring him to sign it immediately. The arbitration agreement here was only ever provided to Plaintiff in English. Plaintiff's Decl. ¶ 16, 26. Defendants appear to acknowledge that Plaintiff did not read English well enough to understand the arbitration agreement as the declaration they submitted affirms incorrectly that Plaintiff could communicate in English but makes no mention of Plaintiff's ability to read English.  Tanfilov Decl. at ¶¶34-38. Most notably, Defendants only note that "all employees – including Plaintiff– are required to speak basic English in order to qualify for a position at APS." Tanfilov Decl. at ¶37 (emphasis added).  Similarly, Defendants state that they interview employees in English to ensure that they speak English, but there is no

indication that any employee can read English.  Tanfilov Decl. at ¶¶ 6-8.  Accordingly, even Defendants acknowledge that they do not know whether Plaintiff could read English at the time. Nevertheless, although Defendants acknowledge that Plaintiff's "dominant language is undoubtedly English," they never had the arbitration agreement translated in Spanish or even had a Spanish-language coworker explain the agreement to Plaintiff.  Tanfilov Decl. at ¶ 35.  Plaintiff therefore did not understand what he was signing.

Further, Defendants misrepresented the contents of the arbitration agreement and denied Plaintiff the ability to have it translated.  Defendant Giana presented the agreement to Plaintiff during a shift and told him he had to sign it immediately. Plaintiff's Decl. ¶ 11-18. Defendant Giana misrepresented the contents of the agreement to Plaintiff, saying that because of his immigration status, he needed to open a business to be able to work for Defendants, and needed to sign the agreement to let Giana do that on his behalf. Plaintiff's Decl. ¶ 15. Defendant Giana claimed that Plaintiff could not continue working for Defendants without signing the arbitration agreement. Plaintiff's Decl. ¶ 17. Defendant Giana did not explain the terms of the agreement to Plaintiff or give him a chance to take it home or have it translated or reviewed by an attorney. Plaintiff's Decl. ¶ 11-18. Plaintiff was not aware that the agreement affected his rights and did not understand the impact it could have on his ability to bring litigation against his employer. Plaintiff's Decl. ¶ 18, 20. Further, Defendants threatened Plaintiff with termination if he did not sign. Plaintiff's Decl. ¶ 18.  Accordingly, "[D]efendants exploited the close relationship between employer and employee as well as [Plaintiff's] lack of English literacy to place [Plaintiff] in a situation in which he would sign the arbitration agreement on the spot without a meaningful opportunity to have the agreement translated." Solis, 2020 WL 1439744, at *5; Brennan, 198 F. Supp. 2d at 377 (arbitration agreement was unenforceable because the plaintiff lacked a

meaningful opportunity to review the agreement and was forced to sign it during a meeting without a chance to review it).

Defendants deny Plaintiff's account and claim that they provided Plaintiff with the arbitration agreement and an employee handbook (which is curiously not included in this motion) at a meeting and that Plaintiff had months to review the agreement.  Plaintiff, however, disputes this account and affirms that he never attended a company-wide meeting regarding an arbitration agreement as Defendants claim. Plaintiff's Decl. ¶ 21.  Barrows v. Brinker Rest. Corp., 36 F.4th 45, 50 (2d Cir. 2022) (holding that a plaintiff's declaration is sufficient evidence to oppose a motion to compel).  Notably, the communication that Defendants allegedly sent to its employees to inform them of this meeting did not state that the meeting was about any documents that employees were expected to sign.  Further, Defendants themselves aver that Plaintiff did not sign the sign-in sheet from the supposed meeting, which is consistent with Plaintiff's testimony that he never attended a meeting regarding an arbitration agreement or employee handbook.  Defendants' own exhibits therefore support Plaintiff's account that Defendants provided the arbitration agreement for him to sign months after this meeting.   In any event, since there is a dispute of fact, and "motions to compel arbitration are governed by a standard similar to that applicable for a motion for summary judgment, a court must draw all reasonable inferences in favor of the non-moving party." Barrows v. Brinker Rest. Corp., 36 F.4th 45, 49 (2d Cir. 2022) (internal quotations omitted).  Accordingly, the Court should not grant Defendants' motion to compel on this record.

Finally, citing Victorio v. Sammy's Fishbox Realty Co., LLC, No. 14 CIV. 8678 CM, 2015 WL 2152703 (S.D.N.Y. May 6, 2015), Defendants argue that Plaintiff is bound by the agreement even if he could not understand it.   However, unlike Sammy's Fishbox, Plaintiff "did not have a reasonable opportunity to make an effort to have the agreements translated into" English.  Solis, 2020 WL 1439744, at *6.  Nor, unlike here, did the employer in that case misrepresent the

document to the plaintiffs.  Sammy's Fishbox, at *14 (employer told employees that the document was a "work paper," which was not a misrepresentation).  By contrast, Defendants told Plaintiff that the arbitration agreement would allow him to continue working for Defendants through setting up another company, which is completely false.  Plaintiff's Decl. ¶ 15-16.

Accordingly, the arbitration agreement was not validly formed.  The Court should therefore deny the motion to compel.

**II.  If the Court Finds the Arbitration Agreement Valid, Some Terms are Unconscionable and Must be Severed.**

Even if the Court finds that an agreement was formed here and requires Plaintiff to arbitrate, it should strike the provisions requiring Plaintiff to pay prohibitory expenses arbitration fees and shortening the statute of limitations as unconscionable.

A clause in an arbitration agreement may be invalidated where it unconscionably limits a plaintiff's substantive rights. Brower v. Gateway 2000, Inc., 246 A.D.2d 246, 676 N.Y.S.2d 569 (1998) (clause which required arbitration to take place in Chicago found substantively unconscionable). Unconscionable terms in an arbitration agreement are severable. Crespo v. Kapnisis, No. 21-CV-6963 (BMC), 2022 WL 2916033, at *6 (E.D.N.Y. July 25, 2022).

**a)  The Court Should Sever the Term Requiring Plaintiff to Pay Arbitration Fees.**

The Court should strike the fee-sharing provision that requires the parties to split arbitration fees "unless a determination is made" that Plaintiff is Defendants' employee, in which case Plaintiff would have to pay $1,000. Courts regularly strike as unconscionable arbitration provisions requiring the payment of significant arbitration fees. Crespo, 2022 WL 2916033, at *6 (striking fee provision requiring the parties to split arbitration fees when the arbitration fees were substantial and the plaintiff could not afford them); Brady v. Williams Cap. Grp., L.P., 64 A.D.3d 127, 878 N.Y.S.2d 693 (2009), aff'd as modified, 14 N.Y.3d 459, 928 N.E.2d 383 (2010)

(arbitration agreement requiring fee-splitting unenforceable where employee could not afford fees); <u>Schreiber v. K-Sea Transp. Corp.</u>, 9 N.Y.3d 331, 341 (2007) (employee "should not be compelled to bear [arbitration] costs which would effectively preclude him from pursuing his claim.") To determine whether arbitration fees are unconscionable, courts apply a "case-by-case analysis that focuses, among other things, upon the claimant's ability to pay the arbitration fees and costs, the expected cost differential between arbitration and litigation in court, and whether the cost differential is so substantial as to deter the bringing of claims." <u>In re Currency Conversion Fee Antitrust Litig.</u>, 265 F. Supp. 2d 385, 411 (S.D.N.Y. 2003)

The Court should strike the clause requiring Plaintiff to pay any portion of the arbitration fee. Under the agreement, Plaintiff may be required to cover half of the arbitration costs "unless a determination is made" that Plaintiff is Defendants' employee. It is not clear who makes this "determination," but the arbitrator would only make it at the end of the arbitration process, by which time Plaintiff would have spent a considerable sum on arbitration costs.  The filing fee with the arbitration alone would cost Plaintiff $1,400 and that does not count the substantial costs for the mediator, which can run as high as $15,000 a day for a hearing and tens of thousands of dollars for the entire process. Exs. 1 and 2. Plaintiff only earns $4,500 monthly after taxes and spends almost his entire salary on family expenses, including rent, tuition, and medical care for his cancer-stricken wife. Plaintiff's Decl. ¶27-30.  These costs are therefore beyond what Plaintiff could reasonably afford. The Court should therefore strike this provision.

**b)  <u>The Court Should Sever the Term Shortening the Relevant Statutes of Limitations.</u>**

The Court should also strike the limitation periods as to Plaintiff's FLSA, NYLL, NYSHRL and NYCHRL claims, since shortening the statute of limitations would impair Plaintiff's substantive rights. The arbitration agreement states the following:

> Additionally, in order to insure that all issues concerning your employment
> are dealt with in a quick and efficient manner, APS requires, as a condition

of its engagement with me to perform services, that any claim or lawsuit, including - but not limited to - claims regarding payment of salary, wages, commissions, bonuses, wage supplements, incentive compensation, and/or severance relating to your service or application for service with the Company must be filed no more than six (6) months after the date of the employment action that is the subject of the claim or lawsuit, except where prohibited by law. I therefore waive any statute of limitations to the contrary.

Def. Ex. C.

This provision is unenforceable. While under New York law, parties can shorten statutes of limitations, the shortened period must be reasonable and contracts shortening a limitations period are "viewed with caution" and "construed strictly" against the party invoking them. Int'l Fidelity Ins. v. Rockland, 98 F.Supp.2d 400, 409 (S.D.N.Y.2000); Lavin v. Briefly Stated, Inc., No. 09 CIV. 8610 (CM)(FM), 2011 WL 1334845, at *6 (S.D.N.Y. Mar. 31, 2011). "[C]ontractual limitation clauses that narrow the statutory limitation are not looked upon with favor" and that they should be construed with strictness against the party invoking them." N. Am. Foreign Trading Corp. v. Mitsui Sumitomo Ins. USA, Inc., 499 F. Supp. 2d 361, 380 (S.D.N.Y. 2007) on reconsideration in part, No. 05 CIV. 4807 (SAS), 2007 WL 2873926 (S.D.N.Y. May 15, 2007), rev'd, 292 F. App'x 73 (2d Cir. 2008), and aff'd in part, 292 F. App'x 73 (2d Cir. 2008).

With regards to the FLSA and NYLL, courts have consistently held that arbitration provisions shortening the limitations period to bring FLSA and NYLL claims are unenforceable. Crespo, 2022 WL 2916033 at *5 (finding the FLSA and NYLL waiver shortening the statute of limitations unenforceable); Castellanos v. Raymours Furniture Co., Inc., 291 F. Supp. 3d 294, 301-2 (E.D.N.Y. 2018) (Bianco, J.) (finding the FLSA waiver shortening the statute of limitations unenforceable). Courts find these waivers unenforceable because the damages that are awarded under the FLSA and NYLL are both tied to the statute of limitations. Castellanos, 291 F. Supp. 3d at 299. That is because "a claim under the FLSA and NYLL claims accrues on the next regular payday following the work period when services are rendered." Nakahata v. New York-

Presbyterian Healthcare Sys., Inc., 723 F.3d 192, 198 (2d Cir. 2013).   In other words, any agreement shortening a statute of limitations under the FLSA and NYLL is inherently depriving an employee of a substantive claim.   An employee would normally have up to 3 years under the FLSA and 6 years under the NYLL. FLSA, 29 U.S.C. § 255 (3 years if violation is willful); NYLL § 663 (six years).   As such, an employee who files a claim on the date of his last unlawful paycheck would been able to collect for up to 3 years of unpaid wages under the FLSA and 6 years under the NYLL. But if the employee is bound by a statute of limitations that limits the employee's claims to 6 months, the employee would lose up to two-and-a-half years of claims under the FLSA and an even greater five-and-a-half years under the NYLL. An employee who is bound by a 6 month statute of limitations therefore would be waiving his substantive rather than procedural rights in an arbitration agreement, and such waivers are unenforceable. Kravar v. Triangle Servs., Inc., No. 1:06-CV-07858-RJH, 2009 WL 1392595, at *3 (S.D.N.Y. May 19, 2009)(noting that a waiver of a substantive right will not be upheld) (citing 14 Penn Plaza LLC v. Pyett, 556 U.S. 247 (2009).

Similar principles apply to Plaintiff's NYSHRL and NYCHRL claims. The Second Circuit has noted that a shortened statute of limitations in an arbitration agreement could prevent an employee from vindicating their claims.   Ragone v. Atl. Video at Manhattan Ctr., 595 F.3d 115, 125 (2d Cir. 2010) (noting that an arbitration provision limiting the period in which to bring a Title VII claim was likely unenforceable if not for the employer's agreement to reinstate the statute of limitations because such a shortened statute of limitations would "significantly diminish" the employee's rights).

Numerous appellate state courts, including the Supreme Courts of New Jersey and Kansas, have also found waivers shortening statutes of limitations unenforceable under public policy. Rodriguez v. Raymours Furniture Co., 225 N.J. 343 (2016); Pfeifer v. Fed. Exp. Corp., 297 Kan.

547, 304 P.3d 1226 (2013).  In <u>Rodriguez</u>, the New Jersey Supreme Court decision that held a private agreement shortening the New Jersey Law Against Discrimination's ("NJLAD") statute of limitations from two years to six months was unenforceable is instructive. Like here, the plaintiff signed an agreement that required the applicant to agree to bring any employment-related cause of action within six (6) months of the alleged discriminatory conduct. <u>Id.</u> at 346. The Court held this shortened statute of limitations to be unenforceable, because it frustrated the NJLAD's "public imperative of eradicating discrimination." <u>Id.</u> at 347.  To further of that imperative, NJLAD created a dual structure that allowed employees to sue in court or file a claim with an administrative agency.  The court held that the furthering of NJLAD's aims requires that employees have the full two years to first bring a claim with the administrative agency and then to remove the claim and bring it in court if the agency is not acting expeditiously.  Requiring an employee to file within six months would essentially force the employee to file in court and skip the administrative process entirely, which would undermine the statute.  <u>Id.</u> at 362.  The court further found that "a statute of limitations period short of two years effectively eliminates claims" because it takes time for employees to realize they have been discriminated against and seek assistance from an attorney and additional time for the attorney to investigate the claim.  <u>Id.</u> at 363. That could lead to employees inadvertently taking too long to file their claims because they and therefore their attorneys were unaware of the shortened statute of limitations and could also lead to attorneys filing suit too quickly without adequate time to investigate the claim, both of which would undermine discrimination claims.  <u>Id.</u>  As a result, the court found the waiver was unenforceable.

Kansas' Supreme Court reached the same conclusion in finding that an employee could not contract to shorten a two year statute of limitations to six months for an unlawful discharge claim. <u>Pfeifer v. Fed. Exp. Corp.</u>, 297 Kan. 547 (2013). Like New Jersey's Supreme Court, the court noted the strong public policy in Kansas against employment discrimination and determined

that there "is little question that restricting an employee's time to bring a retaliatory discharge claim for a job termination suffered following that employee's exercise of a statutory right necessarily impedes the enforcement of that right and the public policy underlying it." Id. at 558.

Like the New Jersey and Kansas statutes, the NYSHRL and NYCHRL reflect strong public policy principles. The NYCHRL was borne from the New York City Council's "recognition that there is no greater danger to the health, morals, safety and welfare of the city and its inhabitants than the existence of groups prejudiced against one another and antagonistic to each other because of their actual or perceived differences." Doe v. Bloomberg, L.P., 36 N.Y.3d 450, 464 (2021) (quoting Administrative Code § 8–101). "The law, therefore, strikes directly at prejudice, intolerance, bigotry, and discrimination, bias-related violence or harassment and disorder occasioned thereby, which threaten the rights and proper privileges of New York City's inhabitants and menace the institutions and foundation of a free democratic state." Id. (internal quotations omitted).  Given these important public policy considerations, the NYCHRL requires "that its provisions be construed liberally for the accomplishment of the uniquely broad and remedial purposes thereof, regardless of whether federal or New York State civil and human rights laws, including those laws with provisions comparably-worded to provisions of this title, have been so construed."  Mihalik v. Credit Agricole Cheuvreux N. Am., Inc., 715 F.3d 102, 109 (2d Cir. 2013) (citing Restoration Act § 7).

Similarly, the NYSHRL "embodies New York's strong public policy against discrimination."  Griffin v. Sirva, Inc., 29 N.Y.3d 174, 189 (2017). Consistent with that strong public policy against discrimination, the New York State legislature recently amended the NYSHRL to make it substantially identical to the NYCHRL.  Arazi v. Cohen Bros. Realty Corp., No. 1:20-CV-8837-GHW, 2022 WL 912940, at *7 (S.D.N.Y. Mar. 28, 2022).

Further, similar to the NJLAD, both the NYSHRL and NYCHRL contain a similar administrative procedure where an employee can file a claim with a government agency. York v. Ass'n of Bar of City of New York, 286 F.3d 122, 127 (2d Cir. 2002). Employees can request that such claims be dismissed for administrative convenience and proceed to court.  Id. n. 2. Finally, like the NJLAD, the NYSHRL and NYCHRL both have lengthy statutes of limitations.  Both statutes have three year statutes of limitations to file in court. NYCHRL, New York City Administrative Code, §8-502(d) (three years); NYSHRL, NY EXEC § 297 (three years for sexual harassment).

Given that the NYSHRL and NYCHRL both substantially parallel the NJLAD, permitting employers to force employees like Plaintiff to sign arbitration agreements in a language they can barely understand that shortens their statutes of limitations from three years to six months would dramatically undermine New York State and New York City's strong public policies to eliminate discrimination. Unsophisticated employees like Plaintiff would have no idea that they had limited their statutes of limitations by almost 85% and neither would their attorneys.  The predictable outcome would be that meritorious claims would be lost.  And if the attorney was aware of the shortened statute of limitations, he might have to rush to file the action or arbitration without a proper investigation in order to avoid the client's rights being extinguished.  Neither outcome comports with eradicating discrimination in New York State and New York City.  Each of the reasons the New Jersey Supreme Court found in rendering unenforceable the waiver in that case applies equally to the NYSHRL and NYCHRL, and the Court should find the provision here is unenforceable as well.  Rodriguez, 225 N.J. at 346-63.[1]

---

[1] While the New York State Appellate Division has issued a number of decisions upholding 6 month statutes of limitations, see e.g., Hunt v. Raymour & Flanigan, 105 A.D.3d 1005, 1006 (2013), appellate division decisions are not binding on this court.  Lee v. Kylin Mgmt. LLC, No. 17-CV-7249 (JMF), 2019 WL 917097, at *2 (S.D.N.Y. Feb. 25, 2019) (appellate division decisions "are not binding on federal courts").  At least one federal court has agreed with these appellate division decisions.  Mason v. AmTrust Fin. Servs., Inc., No. 19 CIV. 8364 (DLC), 2020 WL 6365448,

Accordingly, the Court should find the provision shortening statute of limitations unenforceable.

## **CONCLUSION**

Plaintiff respectfully requests that the Court deny Defendants' motion to dismiss and compel arbitration where no arbitration agreement was formed. Even if an agreement was formed, the Court should strike as unenforceable the terms requiring Plaintiff to pay fees and shortening the statute of limitations.

Dated: December 7, 2023
New York, NY

By:      _____/s/_____
Michael Taubenfeld, Esq.
FISHER TAUBENFELD LLP
225 Broadway, Suite 1700
New York, New York 10007
Phone: (212) 571-0700
*Attorneys for Plaintiff*

---

at *2 (S.D.N.Y. Oct. 29, 2020). None of these cases, however, analyzed the public policies underlying the NYSHRL and NYCHRL and whether they would be undermined by shortening the statute of limitations by such an extreme amount.

16