# Exhibit 2

# Trends in Arbitrator Compensation

*By Deborah Rothman*

Arbitration — and the fees practitioners charge for it — have changed much in the past 40 years. In its early days, arbitration was often a relatively straightforward adjudicative process involving two parties who wanted someone with expertise in their industry whom they both trusted to give them a quick determination of who was at fault and what the compensation to the other side should be. Today arbitration is generally a much more complex process involving rules tailored to different kinds of industries and disputes in the commercial, international, labor, employment, construction, and consumer arenas.

This new world requires much of its practitioners: today's arbitrators need not only a clear understanding of process but managerial skills and substantial expertise in particular areas of the law. Not surprisingly, compensation has increased considerably, reflecting the expertise, experience, and skill that parties and their counsel expect arbitrators to bring to the process.

## Rates and the Price Elasticity of Demand

Setting an appropriate rate is one of the most vexing issues arbitrators face in running their practices. Price yourself too high, and you risk pricing yourself out of the market or, at a minimum, having a great deal of spare time. Price yourself too low, and you're leaving money on the table. Some arbitrators wonder whether by pricing themselves just a bit lower than others with comparable experience and expertise, they will get more work.

This is a great example of the economic idea of price elasticity, a measure of how much demand decreases (or increases) in response to higher (or lower) rates. Price elasticity in this context is particularly interesting because arbitrators' fees intersect with many factors that affect demand, including the magnitude of the case, the geographic area where the parties and their counsel live, the case type, the amount of arbitrator experience and expertise parties and their lawyers want, and even the market's perceptions of arbitrators at certain price points.

So how much do arbitrators charge? Do judges tend to command higher rates than attorney arbitrators? Do women charge the same as men?

Comprehensive data is hard to come by. In terms of safeguarding data about its neutrals, the American Arbitration Association is a kind of Fort Knox, making this data available only when a party has opened an arbitration case. Anecdotal and off-the-record conversations suggest that AAA arbitrators charge as little as $300 and as much as $1,150 an hour (with a few "superstars" charging significantly more) and that rates tend to be highest in the largest markets of New York, Los Angeles, and San Francisco. At JAMS, which also does not publish its arbitrator rates, there is a great deal of variance, with fees ranging from $400 per hour to $15,000 or more per day.

ADR Services, a West Coast provider of mediation and arbitration services, is one of the few providers that publicizes its neutrals' rates on its website. A quick review of the rates suggests that its attorney arbitrators charge about the same as the retired judge arbitrators at the low end ($400 or so) and in the mid-range ($500 to $600) but that a few retired judges charge more than the rest (as much as $875 per hour). That is not the case at JAMS. According to Kimberly Taylor, senior vice president and chief legal and

> *Setting an appropriate rate is one of the most vexing issues arbitrators face in running their practices.*



operating officer at JAMS, "The rates tend to rise with experience and prominence, but retired judges do not necessarily have higher rates than attorney arbitrators, even at the high end."

A rule of thumb is that the most in-demand arbitrators' rates tend to mirror the rates of the most skilled litigators in their respective jurisdictions. My anecdotal research suggests that for the most part, the market has come to understand that judicial experience does not necessarily translate to arbitration acumen, so arbitrators are evaluated on more relevant factors, including subject matter expertise and case management skills. I imagine that for some retired judges, accustomed to thinking of the judiciary as serving the public, charging very high rates might be challenging, whereas an arbitrator coming from a successful career as a business litigator would think nothing of charging rates commensurate with senior attorneys at the law firms that appear before him or her.

Economic theory predicts that lowering one's rate will result in increased business, but that is not

> "Economic theory predicts that lowering one's rate will result in increased business, but that is not necessarily borne out in the arbitration market."

necessarily borne out in the arbitration market. In larger (seven-figure and higher) cases, which are significantly fewer in number, the fees of the arbitrator are a small fraction of the total arbitration budget, and sophisticated litigants understand that expertise comes at a price that pays off in the end. I learned about one case where the dispute involved a claim of more than $1 billion; the arbitration panel's fees to render a final award were $1.1 million. Indeed, in these very large cases, counsel have been known to specify that they do not want to see CVs of arbitrators who charge less than $500 an hour. At the high end, apparently, managerial proficiency, subject matter expertise, and availability

are more important than price. On the other hand, in smaller cases (under $1,000,000), parties tend to be more sensitive to the arbitrator's hourly or daily rate.

Economic theory also would encourage arbitrators to segment the market by charging a lower rate for smaller cases and a higher rate for larger, more complex ones, but for the most part, this is not done, at least not through the major providers. Arbitrators ordinarily have a single, published rate of pay regardless of the size of the case. There are a few institutional exceptions, when providers such as JAMS and the AAA take on certain large caseloads that pay less than what experienced arbitrators ordinarily charge. Additionally, anecdotal information suggests that arbitrators who conduct *ad hoc* arbitrations sometimes depart from the rate they charge through institutional providers, occasionally decreasing them when they have plenty of work but want to work at full capacity, but usually increasing them when the complexity and amount in controversy can support a higher rate.

Seasoned arbitrators are closer to retirement age than many of the litigators who appear before them. As a result, rather than just considering price elasticity and lowering rates, some arbitrators' calculus of how much to charge might incorporate the value of being able to travel, play golf, work *pro bono*, and pursue other emotionally rewarding activities to make up for many work-focused decades. On the other hand, some experienced arbitrators want to keep busy, even if the pay is lower than they usually make, and enjoy arbitrating so much that they make themselves available for expedited, consumer, and other types of cases where the pay is significantly lower than usual. In the interest of staying busy, these arbitrators may also keep their published rates lower than they could command in light of their experience and reputations.

> In response to demand from large corporate clients trying to control spiraling legal budgets, law firms have been working for years on alternative pricing structures.

In response to demand from large corporate clients trying to control spiraling legal budgets, law firms have been working for years on alternative pricing structures. While arbitrators occasionally discuss the concept of providing a fixed fee for an arbitration, I am not aware of this becoming a reality in the field of commercial arbitration. Should the time come when arbitrators are asked to submit fixed-price bids on individual cases, efficient, case-management-savvy arbitrators stand to gain the most business and come out at least as well as if they had charged a straight hourly fee.

A discussion of arbitrator compensation from the point of view of the arbitrator requires a recognition that most providers build an administrative fee[1] into their arbitrators' rates, so what these arbitrators charge and what they net can be quite different. The rule of thumb I have heard is that one-third goes to providers such as JAMS, although arbitrators who bill more than $1 million dollars a year reportedly get a larger cut of their revenues. The AAA, as far as I know, is the only provider that does not retain any portion of arbitrators' fees. Instead, the AAA charges its arbitrators a fairly nominal fixed annual roster fee and charges the parties an administrative fee that factors in the size of the case.

### Do Male and Female Arbitrators Charge Comparable Rates?

Far fewer women than men are on the major arbitration providers' rosters; by most estimates, women comprise only about 20% of arbitration rosters. It should come as no surprise, too, that women are more hesitant than their male counterparts when it comes to pricing their services, as well as charges for expenses related to serving as an arbitrator, including meals and travel. At the AAA, for example, women on the commercial arbitration roster tend to charge less than their male counterparts. Based on available information about West Coast (including Guam and Hawaii) arbitrator rates, women's fees range from a low of $300 to a high of $550 per hour, while men's rates range from $375 to $850, with the average in the $450 to $550 per hour range. Off-the-record interviews suggest, however, that women who charge higher hourly rates are not stricken from rank-and-strike lists based on price; some parties, in fact, actually strike the lowest-charging women for fear they are not as competent.

At ADR Services, female judges charge less than their male counterparts in the upper ranges, at least according to the Los Angeles roster, where women judges charge $425 to $700/hour, while male judges charge $400 to $875. Female attorney arbitrators, on the other hand, charge in the same range as their male counterparts.

For reasons not immediately apparent to me, women arbitrators at JAMS command virtually the same rates as their male counterparts.

## Cancellation Fees

My impression is that cancellation fees were initially more prevalent on the West Coast, where arbitrators were more likely to be full-time neutrals, than on the East Coast, where the majority of arbitrators were practicing at law firms. Since the latter often had other billable work to keep them busy if a two-week hearing canceled, they had no need to impose cancellation fees. Now that both coasts have enough arbitration work to support full-time arbitrators, the East Coast is catching up with California in terms of cancellation fees.

More than half of cases scheduled for arbitration settle before the arbitration hearing. And parties really, really dislike paying cancellation fees to arbitrators, viewing these fees as punitive or at least unnecessary. As JAMS' Kim Taylor explains, "Arbitrator cancellation policies vary but exist because time reserved and later canceled often can't be replaced."

So how do arbitrators handle cancellations? A cancellation policy that is decidedly lenient imposes a fee only if the parties cancel within seven days of the scheduled arbitration; some arbitrators impose fees if the parties cancel as many as 60 days in advance of the arbitration.

> "A number of approaches can reduce party pushback on cancellation fees."

A number of approaches can reduce party pushback on cancellation fees. I make sure that my cancellation fees are noted on my bio so the parties are aware of them before I am selected, I ordinarily highlight these fees when setting the hearing dates in the course of a case management conference, and I incorporate them into a scheduling order. One good practice is to have the case manager contact the parties by phone right before the cancellation fee window starts to make sure that they intend to go forward with the arbitration. If the time demands for the hearing change, many arbitrators will reduce the cancellation fee, for example, charging for the canceled hours at a reduced rate, cutting the billable hours in half, or not charging for the last day of a scheduled hearing if the parties use only four of the five days. And yet even with all these precautions, there is still the possibility that if you impose a cancellation fee, the parties will never hire you again.

The arbitration market is different from most other professional service markets. Expertise, experience, and the ability to diplomatically corral senior litigation partners are what matter most. Because clients correlate arbitrators' rates with level of expertise, arbitrators who charge lower rates are not necessarily going to get more business, and particularly not challenging cases. Rather than pricing themselves lower than established arbitrators, newcomers to the market would probably do well to take on expedited and other fixed-rate low-pay cases, but publish hourly rates within the mainstream of established arbitrator fees. ■



**Deborah Rothman** *is an arbitrator with the American Arbitration Association, where she serves on the Large Complex Commercial, Employment, Real Estate, and Healthcare Panels as well as ICDR, AAA's international roster. She is a Past President of the College of Commercial Arbitrators (CCA), was a co-editor of the CCA's "Protocols for Expeditious, Cost-Effective Commercial Arbitration," and was a contributor to several editions of the College's Guide to Best Practices in Commercial Arbitration. A graduate of Yale College, she holds a JD from NYU Law School and a Master's in Public Affairs from the Woodrow Wilson School at Princeton University. She can be reached at drthmedarb@aol.com.*

## Endnotes

1   Administrative fees vary significantly from provider to provider. Some are stated separately; others, as noted, are partially built into the arbitrators' compensation. Other variables include the items covered by the fees, and how the fees are charged. AAA, for example, has initiated an à la carte option, whereby parties pay only for the services they want.