UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| JUAN PACCHA,<br><br>     *Plaintiff,*<br><br> - against –<br><br>APS ELECTRIC, INC., MIKHAIL MIKHAYLOV, and JANE DOE a/k/a GIANA,<br><br>     *Defendants.* | Case No. 1:23-cv-2075 (NRM) (MMH)<br><br>**DECLARATION OF JUAN PACCHA IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND COMPEL ARBITRATION** |

  I, JUAN PACCHA, the undersigned, affirm as follows under the penalties of perjury pursuant to Federal Rules of Civil Procedure 4(l), 6(b) and Rule 7(b) of the Local Rules for the United States District Court for the Eastern District of New York:

  1.  I was employed by Defendants for about sixteen years.

  2.  I worked at a job site at 172 Madison Avenue, New York, NY for about three and a half years.

  3.  I was injured at work on June 3, 2021, and opened a workers compensation claim. I requested some assistance from my supervisors, Michael and Gino, with heavy lifting while I was recovering and undergoing physical therapy for my injury.

  4.  Defendants ceased calling me into work on September 9, 2021, which I understood to be a termination.

  5.  I was born in Ecuador. I did not complete high school and have only an 11th grade level of formal education.

  6.  English is not my dominant language, and I am only fluent in Spanish.

7. In the spring of 2017, when I unknowingly signed the arbitration agreement that my attorneys recently showed me, I estimate that I understood only about 20% of the English that I read or heard spoken. At the time I was not able to even read a newspaper in English.

8. I am not generally familiar with legal terms and was not aware of the meaning of "statute of limitations" in 2017.

9. Since that time, my English skills have improved, and I now understand 30-40%.

10. In the spring of 2017, I would estimate that I had about 25 Hispanic coworkers out of 40-45 total employees of Defendants.

11. I believe that 2-4 of my Hispanic coworkers at that time could not speak English at all.

12. I do not recognize the name Genadi Tanfilov, but I believe I knew him as Gino or Giana.

13. I recall having a conversation with Gino in or around the summer of 2017 regarding asking me to sign a document.

14. This was the first time I had encountered this document that I recall.

15. Gino told me that the agreement I signed was to open a business in my name.

16. Gino told me that because of my immigration status, I needed to open a business to be able to work for Defendants, and needed to sign the agreement to let them do that on my behalf.

17. Gino told me I had to sign the agreement immediately, and did not give me time to have the document translated or to take it home.

18. Gino indicated that if I did not sign the agreement, I would lose my job and not be able to work for the Defendants any longer.

19. No one ever explained arbitration to me or informed me that I was agreeing to arbitrate any claims I might have instead of bringing them in court.

20. I do not recall receiving an employee handbook at any time.

21. I do not recall a meeting at which employee handbooks or arbitration agreements were discussed.

22. Defendants held all-company meetings only once or twice throughout my entire employment. Defendants would also hold OSHA classes to discuss safety once a year.

23. The company secretary would send emails to inform employees about these meetings.

24. I recall that there were sign-in sheets for these meetings and for the OSHA classes.

25. All of these meetings were held in English even though many of the employees were not conversant in English.

26. At some of these meetings, I recall receiving papers, such as brochures about safety from the OSHA classes; however, I do not remember ever being told I needed to sign and return something I received at a meeting.

27. Defendants never provided me with any documents in my native language, Spanish.

28. Because of my injury, I was out of work from June 2021 until March 2022. I started working at another company in March 2022, where I have been working ever since. I make $35 per hour and usually work 40 hours per week. I make about $5,000 per month, $4,500 after taxes.

29. I pay $1,000 per month in rent. I am also paying partial college tuition for my daughter, amounting to $4,500 per four-month semester or $1,125 per month, and have also had the unexpected cost of hospital bills for my wife's cancer treatments, which are currently approximately $130 a month. I pay credit card debt of about $400 per month. I send about $200

per month home to my family in Ecuador. Food costs for my family are about $200 per week. I spend $34 per week on transportation.

        30.    My utility costs are as follows:

                a.    Internet: $50 per month.

                b.    Cable: $50 per month.

                c.    Gas: $75 in the summer, $230 in the winter.

                d.    Cell phone; $75 per month.

                e.    Electricity; $130 per month.

        31.    I am therefore left with a few hundred dollars per month for emergencies and savings. It would be very difficult for me to afford hundreds or thousands of dollars in arbitration costs.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: December 7, 2023
       New York, NY

                                                            _____/s/_____
                                                           JUAN PACCHA

CORTE DISTRITAL DE ESTADO UNIDOS
DISTRITO ORIENTAL DE NUEVA YORK

| | |
|---|---|
| JUAN PACCHA, <br><br> *Demandante,* <br><br> - en contra de – <br><br> APS ELECTRIC, INC., MIKHAIL MIKHAYLOV, y JANE DOE a/k/a GIANA, <br><br> *Defendido.* | Case No. 1:23-cv-2075 (NRM) (MMH) <br><br> **DECLARACIÓN DE JUAN PACCHA EN OPOSICIÓN DE LA MOCIÓN DE LOS DEFENDIDOS DE DESESTIMAR Y OBLIGAR AL ARBITRAMENTO** |

Yo, JUAN PACCHA, el suscrito, afirmo como procede bajo la penalidad de perjurio, de acuerdo con las Normal Federales de Procedimiento Civil 4(l), 6(b), y la Ley 7(b) de las Normas Locales de la Corte Distrital de los Estado Unidos Corte del Distrito Oriental de Nueva York que:

1. Yo fui empleado de los Defendidos por unos seis años.

2. Yo trabajé en el sitio laboral del 172 Madison Avenue, New York, NY por unos tres años y medio.

3. Yo tuve una lesión laboral el 3 de junio de 2021 e inicié una reclamación de compensación laboral. Yo solicitaba alguna ayuda de mis supervisores, Michael y Gino, con el levantamiento de objetos pesados mientras me recuperaba y hacía la terapia física tras mi lesión.

4. Los Defendidos dejaron de llamarme para trabajar el 9 de septiembre de 2021, lo que para mi entender consideré ser mi despido.

5. Yo nací en Ecuador. Yo no completé el bachillerato y solo terminé el grado 11º de mi educación formal.

1

6. El inglés no es mi lengua dominante y solo hablo con fluidez el español.

7. En la primavera del 2017, cuando firmé inadvertidamente el acuerdo de arbitramento que mis abogados me mostraron recientemente, estimo que solo entendía el 20% del inglés que leía o escuchaba. En ese momento no podía ni leer un periódico en inglés.

8. No tengo familiaridad con términos legales y no era consciente del significado del término "plazo de prescripción" en 2017.

9. Desde ese momento, mi habilidad para el inglés ha mejorado y ahora comprendo entre un 30% y 40%.

10. En la primavera de 2017, estimo que tenía unos 25 compañeros de trabajo hispanos de entre 40 o 45 empleados de los Defendidos.

11. Yo creo que entre 2 a 4 de mis compañeros de trabajo hispanos de ese momento no podían hablar inglés por completo.

12. Yo no reconozco el nombre Genadi Tanfilov, pero creo lo conozco como Gino o Giana.

13. Yo recuerdo haber tenido una conversación con Gino talvez en el verano del 2017 con relación a su petición de que yo firmara un documento.

14. Esa fue la primera vez en la que vi este documento que recuerdo.

15. Gino me dijo que el acuerdo que firmaba era para abrir un negocio a mi nombre.

16. Gino me dijo que por mi estatus migratorio, yo tenía que abrir un negocio para poder trabajar para los Defendidos y tenía que firmar el acuerdo para permitirles hacer eso a mi nombre.

17. Gino me dijo que tenía que firmar el acuerdo de inmediato y no me dio tiempo para hacer que me tradujeran el documento o llevármelo a casa.

18. Gino me indicó que si no firmaba el acuerdo, perdería mi trabajo y podría trabajar más para los Defendidos.

19. Nunca nadie me explicó sobre arbitramento ni me informó que estaba aceptando arbitramento para cualquier reclamación que pudiera tener contra ellos en lugar que hacerla en la corte.

20. Yo no recuerdo haber recibido un manual del empleado en ningún momento.

21. Yo no recuerdo una reunión en la que se discutieran ni el manual del empleado ni el acuerdo de arbitramento.

22. Los Defendidos llevaron a cabo reuniones de toda la compañía solo una o dos veces durante todo mi empleo con ellos. Los Defendidos también llevaron a cabo lecciones OSHA (del inglés Ley de Salud y Seguridad del Trabajo) para discutir sobre seguridad solamente una vez al año.

23. La secretaria de la compañía enviaba correos electrónicos para informar a los empleados sobre estas reuniones.

24. Yo recuerdo que había hojas de registro sobre estas reuniones y de las lecciones OSHA.

25. Todas estas reuniones se llevaron a cabo en inglés aunque muchos de los empleados no hablaban inglés.

26. Yo recuerdo que en algunas de estas reuniones recibí documentos como volantes sobre seguridad de las lecciones de OSHA, sin embargo, yo no recuerdo haber sido instruido en firmar y devolver nada de lo que recibí en alguna reunión.

27. Los Defendidos nunca me proveyeron ningún documento en mi lengua materna, español.

3

28. A razón de mi lesión, no pude trabajar desde junio de 2021 hasta marzo de 2022. Yo comencé a trabajar en otra compañía en marzo de 2022 para la que he estado trabajando desde entonces. Yo gano $35 dólares por hora y usualmente trabajo 40 horas a la semana. Yo hago unos $5.000 dólares al mes, $4.500 dólares después de descontar los impuestos.

29. Yo pago $1.000 de alquiler al mes. Yo también pago la colegiatura parcial de mi hija por un monto de $4.500 dólares por semestre de cuatro meses o $1.125 dólares mensuales y yo he tenido también que pagar costos inesperados de facturas hospitalarias de los tratamiento contra el cáncer de mi esposa, que para hoy son de aproximadamente de $130 dólares al mes. Yo pago $400 dólares de la deuda de la tarjeta de crédito al mes. Yo envío alrededor de $200 dólares al mes a mi familia en Ecuador. Los costos de alimentación para mi familia son de alrededor de $200 dólares a la semana. Yo gasto $34 dólares a la semana en transporte.

30. Mis gasto de servicios públicos son así:

    a. Internet: $50 dólares al mes.

    b. Cable: $50 dólares al mes.

    c. Gas: $75 dólares en el verano, $230 dólares en el invierno.

    d. Teléfono celular: $75 dólares al mes.

    e. Electricidad: $130 dólares al mes.

31. Yo, por consiguiente, me quedo con algunos cientos de dólares al mes para emergencias y ahorro. Sería muy difícil para mí costear cientos o miles de dólares en arbitramento.

***********CONTINÚA EN LA PÁGINA SIGUIENTE***********

5

Hago esta declaración bajo pena de perjurio y lo estipulado es verdad y correcto.

Fechado el: 7 de diciembre, 2023
New York, NY

_____
JUAN PACCHA

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

I, Jaime Cubillos, hereby declare that I am fluent in English and fluent in Spanish, and the above translation is true and correct to the best on my ability.

DECEMBRE 7th, 2023

5