UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
JUAN PACCHA,

                                                                       **Case No.:** 1:23-cv-2075 (NRM) (MMH)

                        Plaintiff,

      -against-

APS ELECTRIC, INC., MIKHAIL MIKHAYLOV,
and JANE DOE a/k/a GIANA,

                        Defendant.
------------------------------------------------------------------X

## DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS AND TO COMPEL ARBITRATION

                                                         **MILMAN LABUDA LAW GROUP PLLC**
                                                         Emanuel Kataev, Esq.
                                                         3000 Marcus Avenue, Suite 3W8
                                                        Lake Success, NY 11042-1073
                                                        (516) 328-8899 (office)
                                                        (516) 303-1395 (direct dial)
                                                        (516) 328-0082 (facsimile)
                                                        emanuel@mllaborlaw.com

                                                        *Attorneys for Defendants*
                                                       *APS Electric Inc. and*
                                                       *Mikhail Mikhaylov*

**VIA ECF**
Fisher Taubenfeld LLP
<u>Attn:</u> Michael Taubenfeld, Esq.
225 Broadway, Suite 1700
New York, NY 10007-3000
michael@fishertaubenfeld.com

*Attorneys for Plaintiff*
*Juan Paccha*

**TABLE OF CONTENTS**

I.   PRELIMINARY STATEMENT ....................................................................................1

II.  ARGUMENT..................................................................................................................1

    A.   The Parties Agreed to Arbitrate……………………………………………..1

    B.   This Dispute Falls Within the Scope of the Arbitration Agreement …. ……..7

    C.   Congress Did Not Intend ADA & FLSA Claims to be
         Non-arbitrable and as such, This Court Need Not Decide
         Whether to Stay the Balance of the Proceedings Pending Arbitration……….7

    D.   Plaintiff's Reference to Allegedly Unconscionable Terms Have no Merit…...8

III. CONCLUSION ............................................................................................................11

i

## TABLE OF AUTHORITIES

**Cases**

Arakawa v. Japan Network Grp.,
  56 F. Supp. 2d 349 (S.D.N.Y. 1999) ......................................................................... 2

AXA Versicherung AG v. New Hampshire Ins. Co.,
  391 Fed. Appx. 25 (2d Cir. 2010) ............................................................................. 2

Bailey v. Ameriquest Mortgage Co.,
  346 F.3d 821 (8th Cir. 2003) .................................................................................... 4

Benson v. Lehman Bros. Inc.,
  No. 04-CIV.-7323(DLC), 2005 WL 1107061 (S.D.N.Y. May 9, 2005) ............... 6, 8

Boss v. Am. Express Fin. Advisors, Inc.,
  15 A.D.3d 306 (1st Dept. 2005) ................................................................................ 9

Brennan v. Bally Total Fitness,
  153 F. Supp. 2d 408 (S.D.N.Y.2001) ........................................................................ 6

Brennan v. Bally Total Fitness,
  198 F. Supp. 2d 377 (S.D.N.Y.2002) ..................................................................... 5, 7

Brower v. Gateway 2000,
  246 A.D.2d 246 (1st Dept. 1998) ............................................................................... 8

Cheshire Place Associates v. West of England Ship Owners Mut. Ins. Ass'n (Luxembourg),
  815 F. Supp. 593 (E.D.N.Y.1993) ............................................................................. 3

Ciago v. Ameriquest Mortgage Co.,
  295 F. Supp. 2d 324 (S.D.N.Y. 2003) .................................................................... 5, 8

Circuit City Stores, Inc. v. Adams,
  532 U.S. 105 (2001)……………………………………………………………….....4

D.H. Blair & Co. v. Gottdiener,
  462 F.3d 95 (2d Cir. 2006) ......................................................................................... 1

Dallas Aerospace, Inc. v. CIS Air Corp.,
  352 F.3d 775 (2d Cir. 2003) ....................................................................................... 6

Envirolite Enterprises, Inc. v. Glastechnische Industrie Peter Lisec Gesellschaft M.B.H.,
  53 B.R. 1007 (S.D.N.Y.1985) .................................................................................... 3

Gaskin v. Stumm Handel GmbH,
    390 F. Supp. 361 (S.D.N.Y.1975) ................................................................................... 3

Gillman v. Chase Manhattan Bank, N.A.,
    73 N.Y.2d 1 (1988) ........................................................................................................... 6

Gilmer v. Interstate/Johnson Lane Corp.,
    500 U.S. 20 (1991) ........................................................................................................... 7

Hornstein v. Negev Airbase Constructors,
    110 A.D.2d 884 (2d Dept. 1985) ..................................................................................... 9

Horvath v. Banco Comercial Portugues, S.A.,
    No. 10-CIV.-4697 (GBD), 2011 WL 666410 (S.D.N.Y. Feb. 15, 2011) ........................... 2

Horvath v. Banco Comercial Portugues, S.A.,
    461 Fed. Appx. 61 (2d Cir. 2012) .................................................................................... 2

Hunt v. Raymour & Flanigan,
    105 A.D.3d 1005 (2d Dept 2013) .................................................................................... 9

Isaacs v. OCE Bus. Servs., Inc.,
    968 F. Supp. 2d 564 (S.D.N.Y.2013) ............................................................................. 10

John J. Kassner & Co. v. City of New York,
    46 N.Y.2d 544 (1979) ...................................................................................................... 9

Kaplan v. N.Y. State Dep't of Labor,
    No. 18-CIV.-3629 (KPF), 2019 U.S. Dist. LEXIS 121131 (S.D.N.Y. July 19, 2019) ...... 7

Kasraie v. Jumeirah Hospitality & Leisure (USA), Inc.,
    2013 U.S. Dist. LEXIS 147805 (S.D.N.Y. Oct. 10, 2013) ............................................. 10

Keller v. About, Inc.,
    2021 U.S. Dist. LEXIS 86235 (S.D.N.Y. May 5, 2021 ................................................... 10

Manigault v. Macy's East, LLC
    318 Fed.Appx. 6 (2d Cir. 2009) ....................................................................................... 2

Molina v. Coca–Cola Enters., Inc.,
   No. 08-CIV.-6370 (MAT), 2009 WL 1606433 (W.D.N.Y. Jun. 8, 2009)…………………2

Morales v. Sun Constructors, Inc.,
    541 F.3d 218 (3d Cir. 2008) ............................................................................................. 3

Nayal v. HIP Network Servs. IPA, Inc.,
	620 F. Supp. 2d 566 (S.D.N.Y. 2009) ................................................................................ 4

Ortegas v. G4S Secure Solutions (USA), Inc.,
	156 A.D.3d 580 (1st Dept. 2017) ....................................................................................... 9

PacifiCare Health Sys., Inc. v. Book,
	538 U.S. 401 (2003) ........................................................................................................... 8

Paper Express Ltd. v. Pfankuch Maschinen GmbH,
	972 F.2d 753 (7th Cir. 1992) ............................................................................................. 3

Ragone v. Atl. Video at Manhattan Ctr.,
	595 F.3d 115 (2d Cir. 2010) .............................................................................................. 6

Rompalli v. Portnova,
	No. 09-CIV.-3083 (RMB) (FM), 2010 WL 2034396 (S.D.N.Y. May 5, 2010) ................ 5

Rompalli v. Portnova,
	No. 09-CIV.-3083 (RMB) (FM), 2010 WL 2034362 (S.D.N.Y. May 21, 2010) .............. 5

Samake v. Thunder Lube, Inc.,
	2020 U.S. Dist. LEXIS 258374 .......................................................................................... 8

Solis v. ZEP LLC,
	No. 19-CIV.-4230 (JGK), 2020 WL 1439744 (S.D.N.Y. Mar. 24, 2020) ......................... 5

Spinelli v NFL,
	903 F.3d 185 (2d Cir. 2018) .............................................................................................. 8

Victorio v. Sammy's Fishbox Realty Co., LLC,
	No. 14-CIV.-8678 (CM), 2015 WL 2152703 (S.D.N.Y. May 6, 2015) ............................ 4

Walther v. Sovereign Bank,
	386 Md. 412 (2005) ........................................................................................................... 3

Weiss v. La Suisse,
	154 F. Supp. 2d 734 (S.D.N.Y.2001) ................................................................................ 2

Williams v. Parkell Prods., Inc.,
	91 Fed. Appx. 707 (2d Cir. 2003) ..................................................................................... 4

**Statutes**

New York Civil Practice Law & Rules § 201 .............................................................................. 9

I.       **PRELIMINARY STATEMENT**

Defendants APS Electric, Inc. ("APS") and Mikhail Mikhaylov (collectively the "Defendants") submit this reply memorandum of law in further support of their motion to dismiss this action and compel Plaintiff Juan Paccha ("Plaintiff") to submit his claims to arbitration pursuant to an arbitration agreement he executed in June 2017 (the "Arbitration Agreement") as a condition of employment with APS.

In opposition, Plaintiff provides no basis to deny this relief.

Plaintiff first claims that he had no opportunity to read or understand the Arbitration Agreement as English language skills are limited, which is belied by the Declaration of Genadi Tanfilov. He also claims that the contents of the Arbitration Agreement were misrepresented to him, which is similarly unavailing.

Plaintiff also objects to some of the terms within the arbitration agreement. However, the viability of those terms must be decided by an arbitrator. Finally, Plaintiff misleads the Court to believe that Plaintiff would be forced to pay arbitration fees, which is belied by the Arbitration Agreement, as it provides that he would only be responsible to pay the first $1,000.00 of any fees associated with any arbitration resulting under this agreement.

II.      **ARGUMENT**

    A. **The Parties Agreed to Arbitrate.**

As set forth in Defendants' moving papers, a party seeking to enforce such an agreement need only show that it reasonably communicated the provision to the party it seeks to enforce it against. See D.H. Blair & Co. v. Gottdiener, 462 F.3d 95, 103 (2d Cir. 2006).

In this case, Plaintiff agrees and admits that he did sign the Arbitration Agreement.

When a party signs a contract,[1] they are presumed to have assented to its contents. See Arakawa v. Japan Network Grp., 56 F. Supp. 2d 349, 352 (S.D.N.Y. 1999). Notwithstanding the foregoing, Plaintiff argues that there was no meeting of the minds between the parties in the execution of the Arbitration Agreement.

Plaintiff's first contention is that he does not understand the English language well enough to be bound to the Arbitration Agreement. However, courts have repeatedly ruled that an imperfect grasp of the English language will not relieve an individual of making a reasonable effort to have the document explained to him. See Molina v. Coca–Cola Enters., Inc., No. 08-CIV.-6370 (MAT), 2009 WL 1606433, at *8 (W.D.N.Y. Jun. 8, 2009) (citing cases). Failure to read a contract – even if such failure is brought about by an inability to understand the language – is not an excuse or defense to enforcement of the contract terms. See Horvath v. Banco Comercial Portugues, S.A., No. 10-CIV.-4697 (GBD), 2011 WL 666410, at *4 (S.D.N.Y. Feb. 15, 2011) aff'd, 461 Fed. Appx. 61 (2d Cir. 2012) (citing AXA Versicherung AG v. New Hampshire Ins. Co., 391 Fed. Appx. 25, 30 (2d Cir. 2010) ("If the signer could read the instrument, not to have read it was gross negligence; if he could not read it, not to procure it to be read was equally negligent; in either case the writing binds him") (citations omitted); Weiss v. La Suisse, 154 F. Supp. 2d 734. 737 (S.D.N.Y.2001) ("While the Court was originally troubled by the fact that the paperwork to obtain the policies was printed in a language the plaintiffs do not speak, defendants remind me of the ancient contract maxim that

---

[1] Courts have compelled arbitration even where an employee did not sign the arbitration agreement. In Manigault v. Macy's East, LLC, the plaintiff contended that she was not bound by her employer's dispute resolution program, because she never signed a form acknowledging that she would be precluded from filing in a judicial forum. See 318 Fed. Appx. 6, 7–8 (2d Cir. 2009) (summary order). The Second Circuit directed the district court to grant defendant's motion to compel arbitration, holding that, by continuing her employment after receiving notice of the dispute resolution program, plaintiff had agreed to arbitration. Id. at 8 (applying New York contract law and finding that, "an employee may consent to ... [a] term[ ] of employment by continuing to work after receiving notice" of that term. Id. at 8.

even a blind man must protect himself by procuring someone to read a contract for him"); <u>Envirolite Enterprises, Inc. v. Glastechnische Industrie Peter Lisec Gesellschaft M.B.H.</u>, 53 B.R. 1007, 1013–14 (S.D.N.Y.1985) (enforcing a contract clause despite it being in German when the rest of the contract was in English); <u>Cheshire Place Associates v. West of England Ship Owners Mut. Ins. Ass'n (Luxembourg)</u>, 815 F. Supp. 593, 597 (E.D.N.Y.1993) ("Presumably Frank reads and understands English. Even if he does not, failure to read or investigate the terms of the contract one signs is not a defense to enforcement of the contract"); <u>Gaskin v. Stumm Handel GmbH</u>, 390 F. Supp. 361, 367 (S.D.N.Y.1975) (enforcing a contract clause in German even when one party did not speak German and asked for and did not receive an English translation).

Other Circuit Courts of Appeal have similarly held so. <u>See</u> <u>Paper Express Ltd. v. Pfankuch Maschinen GmbH</u>, 972 F.2d 753, 758 (7th Cir. 1992) ("the fact that the rules were in German [does not] preclude enforcement of the [forum selection clause]. In fact, a blind or illiterate party (or simply one unfamiliar with the contract language) who signs the contract without learning of its contents would be bound. Mere ignorance will not relieve a party of her obligations and she will be bound by the terms of the agreement"); <u>Morales v. Sun Constructors, Inc.</u>, 541 F.3d 218, 222 (3d Cir. 2008) ("In the absence of fraud, the fact that an offeree cannot <u>read</u>, <u>write</u>, <u>speak</u>, <u>or understand</u> the English language is immaterial to whether an English-language agreement the offeree executes is enforceable") (emphasis added); <u>see</u> <u>also</u> <u>Walther v. Sovereign Bank</u>, 386 Md. 412, 444 (2005) (holding that "if [plaintiffs] did not [read the document] before they signed the agreement, they have no persons to blame but themselves. As expressed [before], we are loath to rescind a conspicuous arbitration agreement that was signed by a party whom now, for whatever reason, does not desire to fulfill that agreement").

Plaintiff's declaration thus does not establish that there was no agreement to arbitrate.

3

Plaintiff also declares that: (i) no one ever explained arbitration to him; (ii) he was merely asked to sign a document around the summer of 2017; (iii) he does not recall reviewing the Arbitration Agreement in particular; (iv) he had to sign the agreement immediately, and was not given time to have the document translated or to take it home; and (v) he was asked to open a business. However, he fails to state that he affirmatively asked what the document was and that it was misrepresented to him; as such, he must arbitrate. See Victorio v. Sammy's Fishbox Realty Co., LLC, No. 14-CIV.-8678 (CM), 2015 WL 2152703, at *12 (S.D.N.Y. May 6, 2015) (holding, as to argument they had no chance to review the agreement, that "[t]he two men did not testify that they asked what the documents said and were refused explanations, or that the documents were affirmatively misrepresented to them. Immigrants and native Spanish speakers or not, the onus was on them at least to try to understand what they were signing—they too must arbitrate").

Further, even if Plaintiff was told he would be terminated if he did not sign the arbitration agreement, the offer of an arbitration agreement on a "take it or leave it" basis – terms which normally create procedural unconscionability for virtually all other types of agreements – is not sufficient under New York law to render an arbitration provision procedurally unconscionable." See Nayal v. HIP Network Servs. IPA, Inc., 620 F. Supp. 2d 566, 571 (S.D.N.Y. 2009).

Similarly, the mere fact that an agreement to arbitrate was required as a condition of employment, *or continued employment*, also is insufficient to invalidate the provision. See Bailey v. Ameriquest Mortgage Co., 346 F.3d 821, 823 (8th Cir. 2003) (emphasis added). Indeed, "[i]t is well-settled ... that conditioning employment on the acceptance of an agreement to arbitrate disputes ... is not itself unlawfully coercive." See Williams v. Parkell Prods., Inc., 91 Fed. Appx. 707, 708-09 (2d Cir. 2003) (citing Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 123-24 (2001)).

Plaintiff relies on Solis v. ZEP LLC, for the proposition that an illiterate individual cannot have an arbitration agreement enforced against him. See No. 19-CIV.-4230 (JGK), 2020 WL 1439744, at *6 (S.D.N.Y. Mar. 24, 2020). But an arbitrator – not the Court – must determine Plaintiff's claim of unconscionability. In fact, courts have held that because an unconscionable agreement is voidable – not void – an arbitrator must determine whether or not the party disadvantaged by the allegedly unconscionable agreement ratified the agreement with full knowledge of all the material circumstances. See Rompalli v. Portnova, No. 09-CIV.-3083 (RMB) (FM), 2010 WL 2034396, at *4 (S.D.N.Y. May 5, 2010) report and recommendation adopted, No. 09-CIV.-3083 (RMB) (FM), 2010 WL 2034362 (S.D.N.Y. May 21, 2010). In any event, it is worthy to note that Plaintiff does not even recall reviewing the arbitration agreement. See Declaration of Juan Paccha ¶ 14. Courts have held that a party who cannot recall signing an arbitration agreement cannot prove that a compulsory arbitration agreement was procedurally unconscionable. See Ciago v. Ameriquest Mortgage Co., 295 F. Supp. 2d 324, 329 (S.D.N.Y. 2003) (holding that the possibility of compulsory arbitration must not have been particularly objectionable to plaintiff at the time of signing since she has no recollection of signing the Agreement or its contents).

Plaintiff also relies on Brennan v. Bally Total Fitness to support his position. See 198 F. Supp. 2d 377 (S.D.N.Y. 2002). There, a court found an arbitration agreement to be procedurally unconscionable where the plaintiff was a single mother pregnant with twins who was dependent on her employer for health insurance benefits, was provided only fifteen (15) minutes to review a sixteen (16) page agreement, and was threatened that she would not be promoted unless she signed the agreement.

This case is inapposite for an array of reasons.

5

First, the plaintiff here is a male who is not pregnant nor a single parent, and is not alleged to be dependent on employer-sponsored health insurance coverage. In addition, the arbitration agreement here is only three (3) pages long, substantially shorter than the one in Brennan.

Plaintiff's argument that the arbitration agreement was misrepresented to him similarly fails. "Under New York law, a contract is unconscionable when it is 'so grossly unreasonable or unconscionable in the light of the mores and business practices of the time and place as to be unenforceable [sic] according to its literal terms.'" See Gillman v. Chase Manhattan Bank, N.A., 73 N.Y.2d 1, 10 (1988)).

"A contract generally is unenforceable by reason of unconscionability only if it was *both* procedurally *and* substantively unconscionable when made." See Benson v. Lehman Bros. Inc., No. 04-CIV.-7323(DLC), 2005 WL 1107061, at *2 (S.D.N.Y. May 9, 2005) (emphasis added). "The procedural element of unconscionability concerns the contract formation process and the alleged lack of meaningful choice; the substantive element looks to the content of the contract." See Ragone v. Atl. Video at Manhattan Ctr., 595 F.3d 115, 121–22 (2d Cir. 2010).

To determine whether an agreement to arbitrate was procedurally unconscionable, a court should take a "flexible" approach and consider all the facts and circumstances surrounding the making of an alleged agreement. See Brennan v. Bally Total Fitness, 153 F. Supp. 2d 408, 416 (S.D.N.Y.2001). Relevant factors to consider include the commercial setting of the transaction, the experience and education of the parties, disparity in bargaining power, as well as whether "deception, high-pressured tactics, and the use of fine print" were used to deprive the disadvantaged party of a "meaningful choice." See Dallas Aerospace, Inc. v. CIS Air Corp., 352 F.3d 775, 787 (2d Cir. 2003) (citations omitted).

6

It is beyond dispute that "[m]ere inequality in bargaining power ... is not a sufficient reason to hold that arbitration agreements are never enforceable in the employment context." See Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 33 (1991); see also Nayal, 620 F. Supp. 2d at 571. But unequal bargaining power "when coupled with high pressure tactics that coerce [a signatory's] acceptable of onerous terms, may be sufficient to show that [the signatory] lacked a meaningful choice." See Brennan v. Bally Total Fitness, 198 F. Supp. 2d 377, 382 (S.D.N.Y.2002) (citations omitted).

The record here is sufficient to demonstrate that Plaintiff received notice of the arbitration policy in April 2017 and did not sign until June 2017, months later, evidencing the complete lack of any high pressure tactics.

Accordingly, this Court should find that the parties agreed to arbitrate and compel arbitration.

### B. This Dispute Falls Within the Scope of the Arbitration Agreement.

Plaintiff makes no argument that this dispute does not fall within the scope of the Arbitration Agreement. As such, he has conceded it for purposes of this motion. See, e.g., Kaplan v. N.Y. State Dep't of Labor, No. 18-CIV.-3629 (KPF), 2019 U.S. Dist. LEXIS 121131, at *14-15 (S.D.N.Y. July 19, 2019) ("Courts will normally deem a claim abandoned if a plaintiff fails to address or oppose a defendant's arguments …").

### C. Congress Did Not Intend ADA & FLSA Claims to be Non-arbitrable and as such, This Court Need Not Decide Whether to Stay the Balance of the Proceedings Pending Arbitration.

Plaintiff similarly makes no argument that Congress intended the Americans with Disabilities Act ("ADA") and the Fair Labor Standards Act ("FLSA") to be non-arbitrable. As such, he has also conceded this point. See Kaplan, 2019 U.S. Dist. LEXIS 121131, at *14-15.

7

**D. Plaintiff's Reference to Allegedly Unconscionable Terms Have no Merit**

Plaintiff seeks to invalidate the provisions in the Arbitration Agreement shortening the statute of limitations and concerning fees.

As set forth *supra*, these issues are inappropriate for this Court to decide and an arbitrator should decide those issues. See Samake v. Thunder Lube, Inc., 2020 U.S. Dist. LEXIS 258374, *10 ("However, as explained above, procedural questions are presumptively for the arbitrator, not a judge, to decide. Inquiries into proper notice are plainly procedural questions. Whether the notice requirement here is enforceable and whether that means plaintiff has waived his claims is a question for the arbitrator") (citing PacifiCare Health Sys., Inc. v. Book, 538 U.S. 401, (2003); Ciago, 295 F. Supp. 2d at 332-33 ("The arbitrator might find that it amounts to an impermissible waiver of plaintiff's FLSA rights or he or she might find that leave may be granted to file late notice").

In the event that this Court nonetheless considers Plaintiff's motion to sever (which it should not), Defendants submit the below authorities and argument in opposition.

A contract provision may be deemed unenforceable on unconscionability grounds "only where it is both procedurally and substantively unconscionable when made." See Spinelli v NFL, 903 F.3d 185 (2d Cir. 2018) (emphasis added); see also Benson v. Lehman Bros., Inc., 2005 WL 1107061, at *2 ("A contract generally is unenforceable by reason of unconscionability only if it was both procedurally and substantively unconscionable when made"). Establishing substantive unconscionability entails an examination of the substance of an agreement in order to determine whether the terms unreasonably favor one party. See Brower v. Gateway 2000, 246 A.D.2d 246, 254 (1st Dept. 1998).

8

Here, Plaintiff cannot establish substantive unconscionability since courts and arbitrators routinely uphold agreements to reduce the statutes of limitations under New York law. See Ortegas v. G4S Secure Solutions (USA), Inc., 156 A.D.3d 580 (1st Dept. 2017) (upholding dismissal of claims as time-barred based on the terms of plaintiff's employment application since plaintiff could not "establish substantive unconscionability, as New York courts have held that a six-month period to bring an employment claim is inherently reasonable") (internal citations omitted).

In fact, New York law provides that "[a]n action … must be commenced within the time specified in this article *unless ... a different time is prescribed by written agreement*." See New York Civil Practice Law & Rules ("CPLR") § 201 (emphasis added).

Accordingly, courts consistently uphold agreements requiring employees to provide notice of claims within periods considerably shorter than statutory periods and the shortened period contained in the SOL Clause. See, e.g., Hornstein v. Negev Airbase Constructors, 110 A.D.2d 884, 884-885 (2d Dept. 1985) (holding that 30-day notice of claim provision in an employment agreement was not only permitted by CPLR § 201, but was reasonable where plaintiff pursued claims for allegedly unpaid monies).

Courts also enforce agreements shortening the statute of limitations for employment-based claims based on CPLR § 201 on a regular basis. See, e.g., Boss v. Am. Express Fin. Advisors, Inc., 15 A.D.3d 306 (1st Dept. 2005) (holding that statute of limitations period contained in agreement that was shorter than the period provided for in NYLL was binding); John J. Kassner & Co. v. City of New York, 46 N.Y.2d 544 (1979) (holding that agreement to shorten statute of limitations was enforceable pursuant to CPLR § 201 in action for money allegedly owed for work performed); Hunt v. Raymour & Flanigan, 105 A.D.3d 1005 (2d Dept 2013) (holding plaintiff's contentions that the shortened limitations period set forth in the employment application was not applicable or

9

was unenforceable are without merit); Kasraie v. Jumeirah Hospitality & Leisure (USA), Inc., 2013 U.S. Dist. LEXIS 147805, at *17-18 (S.D.N.Y. Oct. 10, 2013) (granting motion to dismiss ERISA claim as time-barred based on contract clause shortening statute of limitations).

In Keller v. About, Inc., the Hon. Jesse M. Furman, U.S.D.J. ("Judge Furman") granted a motion to compel arbitration, ruling that an agreement to shorten the statute of limitations of employment-related claims to 6 months was enforceable where plaintiff asserted, *inter alia*, NYLL claims. See 2021 U.S. Dist. LEXIS 86235 (S.D.N.Y. May 5, 2021).

Judge Furman reasoned that: (a) "New York courts … enforce contract provisions shortening the limitations for bringing *any* claim against a party" where the "shortened statute of limitations … is reasonable and agreed to by contract;" and (b) several courts have upheld a 6-month limitations periods as reasonable for employment claims. Id. at *8-9 (citations omitted). There is therefore no basis to stray from this precedent in this case.

It should be noted that Defendants do not argue that the statute of limitations.

Finally, without waiving their argument that Plaintiff was an independent contractor, Defendants will only require Plaintiff to pay the first $1,000.00 of any fees in arbitration. See Isaacs v. OCE Bus. Servs., Inc., 968 F. Supp. 2d 564, 569 (S.D.N.Y.2013) ("When both an employer and its employees are bound to an agreement to arbitrate, when the terms of the agreement are equally applicable to both parties, and when the employer bears any unreasonable cost of the arbitration, the arbitration agreement is not unreasonably favorable to the employer") (citations omitted).

Accordingly, the motion to compel arbitration must be granted and the complaint should be dismissed in its entirety.

### III.     CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court dismiss the action in its entirety with prejudice.

Dated: Lake Success, New York
December 22, 2023

Respectfully submitted,

**MILMAN LABUDA LAW GROUP PLLC**

*/s/ Emanuel Kataev, Esq.*
Emanuel Kataev, Esq.
3000 Marcus Avenue, Suite 3W8
Lake Success, NY 11042-1073
(516) 328-8899 (office)
(516) 303-1395 (direct dial)
(516) 328-0082 (facsimile)
emanuel@mllaborlaw.com

*Attorneys for Defendants*
*APS Electric Inc. and*
*Mikhail Mikhaylov*

**VIA ECF**
Fisher Taubenfeld LLP
<u>Attn:</u> Michael Taubenfeld, Esq.
225 Broadway, Suite 1700
New York, NY 10007-3000
michael@fishertaubenfeld.com

*Attorneys for Plaintiff*
*Juan Paccha*