# FISHER | TAUBENFELD LLP

225 Broadway, Suite 1700
New York, New York 10007
**Main** 212.571.0700
**Fax** 212.505.2001
www.fishertaubenfeld.com

Writer's direct dial: (212) 571-0700 ex. 102
Writer's email: michael@fishertaubenfeld.com

August 11, 2025

**VIA ECF**
Hon. Marcia M. Henry
United States Magistrate Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

      Re:  Paccha v. APS Electric, Inc. et al
      Case No.: 23-cv-2075 (NRM)(MMH)

Dear Judge Henry:

      We represent Plaintiff in this action.  Plaintiff and Defendants write to respectfully request that the Court approve their settlement as fair and reasonable under Cheeks v. Freeport Pancake House, Inc., 796 F.3d 199 (2d Cir. 2015) and dismiss Plaintiff's claims.

    I.    **FACTUAL AND LEGAL BACKGROUND.**

      Plaintiff worked for Defendants as a mechanic for sixteen years. Throughout Plaintiff's employment, he worked more than forty (40) hours per week often as reflected in the time records produced by Defendants. Until 2018, Plaintiff alleges he worked from 7:00 a.m. until 5:00 p.m. on Mondays through Thursdays, and from 7:00 a.m. until 4:00 p.m. on Fridays and Saturdays for a total of 58 hours. Starting in 2018, Plaintiff alleges that his Monday through Thursday schedule lengthened by one hour such that he worked until 6:00 p.m on those days for a total of 62 hours. After the Company reopened following a brief closure in March and April 2020, Plaintiff alleges he worked from 7:00 a.m. to 4:00 p.m., Monday through Friday, with a half hour lunch break. After March 2020, Plaintiff alleges he worked about 42.5 hours per week.

      Despite regularly working more than 40 hours a week, Plaintiff alleges that Defendants failed to pay him time and a half for all hours he worked above 40 per week.

Instead, Plaintiff alleges that Defendants paid him $30 an hour for each of the hours he worked without any overtime premium. In addition, Plaintiff alleges that Defendants failed to provide Plaintiff with proper paystubs.[1]

Defendants filed a motion to compel arbitration based on an arbitration agreement that Plaintiff allegedly signed. This arbitration agreement contained problematic language, particularly the shortening of the statute of limitations for all of Plaintiff's claims to six (6) months, a timeframe with which Plaintiff did not comply. As a result, Plaintiff opposed the motion. The Court held a hearing, and the parties agreed to mediate through the Court's mediation program prior to the Court deciding the motion. Plaintiff made a demand based on his damages calculations and calculated that he was owed $60,170.36 in unpaid overtime damages, an equal amount in liquidated damages, and $10,000 for Defendants' failure to provide wage notices and proper wage statements for a total of $130,340.71. (**Exhibit 1 – Plaintiff's Damages Calculations**). However, the time and pay records Defendants produced dramatically reduced the alleged underpayment. The unpaid wages calculated by accounting for a spreadsheet recording the time and pay records produced resulted in a reduced total damages calculation of $21,115.94.

The case settled and ultimately, the parties finalized the settlement in a Settlement Agreement (**Exhibit 2**). Under the Agreement, Plaintiff is to receive $10,000.00 in three equal payments, which is broken down as follows: $6,666.67 to Plaintiff and $3,333.33 to Plaintiff's counsel, which is 33.3% of the settlement. In exchange for this settlement payment, Plaintiff agrees to release his FLSA and NYLL claims against Defendants. Plaintiff did not agree to a general release. There are also no confidentiality or nondisparagement clauses in the agreement.

## II. THE SETTLEMENT IS FAIR AND REASONABLE.

The Court should approve the settlement. In determining whether to approve a settlement, courts often look at the following factors:

> (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion.

Guajardo v. Titan Constr. Servs. LLC, No. 19-CV-1551 (OTW), 2020 WL 1922642, at *2 (S.D.N.Y. Apr. 21, 2020).

---

[1] Plaintiff also alleged that Defendants discriminated against him because of his disability. Plaintiff has asserted in this suit claims under the New York City Human Rights Law. The parties have settled these non-wage discrimination claims by means of a separate agreement. This Court reviews agreements that settle non-wage claims and therefore Plaintiff is attaching the non-wage agreement as **Exhibit 3**, which Plaintiff files under seal due to its confidentiality provision. See Yunganaula v. D.P. Grp. Gen. Contractors/Devs. Inc., No. 21CV2015CBAMMH, 2023 WL 2707024, at *4 (E.D.N.Y. Mar. 30, 2023). The nonwage agreement does not infringe on the wage agreement because the confidentiality clause does not apply to Plaintiff's wage and hour claim and the general release is mutual.

The settlement is reasonable under these factors. First, although Plaintiff could potentially recover approximately $130,000 if he were successful on all of his claims, he would be unlikely to do so. Defendants have moved to compel arbitration and if an arbitrator enforced the provision shortening the statute of limitations, Plaintiff's wage claims would be completely extinguished. And even if the Court declined to enforce the provision as to his FLSA claims, if it enforced the provision as to his NYLL claims, Plaintiff's damages would be entirely from the period where he worked only 42.5 hours per week and had less than $5,000 in damages. Further, Defendants' time and pay records reflect a maximum of approximately $21,000 in total damages, which means that even if Plaintiff succeeded in defeating the motion to compel arbitration in its entirety, he could end up with significantly less than his original damages number. Given these significant risks and burdens of this litigation, Plaintiff's settlement is justified.

Further, the parties negotiated in good faith and at arms-length with the assistance of a court appointed mediator. The settlement allows the parties to avoid all of the risks and expenses of litigation, which in this case would be extensive given that the parties had not started discovery and the Court had to decide Defendants' motion to compel arbitration. Finally, there is obviously no fraud or collusion involved here, as both parties have been represented by experienced counsel, and the parties voluntarily disclosed the existence of a separate settlement agreement.

Notably, no extra factors support denying the settlement. In particular, the release is limited to wage-and-hour claims and the claims asserted in this lawsuit, and there is no confidentiality or non-disparagement provision.

Finally, the attorneys' fees are reasonable.[2] Under the agreement, my firm will receive $3,333.33 in attorneys' fees and costs, which represents 33.3% of the settlement. Courts regularly approve attorneys' fees of even one-third of the settlement amount in FLSA cases. Carnero v. Bagel Mentch, Inc., No. 21CV0781FBJMW, 2022 WL 3448660, at *4 (E.D.N.Y. Apr. 12, 2022), report and recommendation adopted sub nom. Carnero v. Bagel Mentsch, Inc., No. 1:21-CV-0781-FB-JMW, 2022 WL 3446335 (E.D.N.Y. Aug. 17, 2022); Luna v. J.S. Held LLC, No. 2:21-CV-03072-JMW, 2023 WL 2214012, at *7 (E.D.N.Y. Feb. 24, 2023).

If the Court wishes to engage in a lodestar check, the lodestar is $13,915.00 (**Exhibit 4 – Attorney Timesheets**). Plaintiff is therefore requesting a multiplier of 0.24. Because courts "regularly award lodestar multipliers from two to six times lodestar," the Court should approve the attorneys' fees, which are only a quarter of the fees. Arsenal v. Star Nissan, Inc., No. 23-CV-06631 (HG), 2024 WL 1513531, at *3 (E.D.N.Y. Apr. 8, 2024); Villegas v. Jorge's Rest. Corp., No. 23-CV-01492 (HG), 2024 WL 2033495, at *3 (E.D.N.Y. Apr. 24, 2024) (awarding a multipler of 2.4).

I am only requesting my fees. I am requesting an hourly rate of $550. I am a partner at Fisher Taubenfeld LLP. I was admitted to the Bar of the State of New York in 2008 and since then have practiced labor and employment law, with a strong focus on wage-and-hour law. I have litigated as the primary attorney dozens of FLSA cases and have been designated class

---

[2] Plaintiff is not requesting costs under this agreement.

3

counsel in a FLSA case in this District in Gonzalez et al v. Allied Concrete Industries Inc. et al., EDNY Case No.: 2:14-cv-4771 (GRB)(SIL), where I recently won partial summary judgment in the hundreds of thousands of dollars for the class. I have also successfully won appeals in wage-and-hour matters before the Second Circuit and New York courts. Catzin v. Thank You & Good Luck Corp., 899 F.3d 77 (2d Cir. 2018); Hichez v. United Jewish Council of the E. Side, 179 A.D.3d 576, 117 N.Y.S.3d 214 (N.Y. App. Div. 2020). I am a member of the New York chapter of the National Employment Lawyers Association (NELA-NY) and have been invited to give CLEs on the FLSA. I have also been named a "Rising Star" by Super Lawyers. One Court in this District recently held that the "forum rates in the Eastern District [should] now be $450-$650 for partners." Rubin v. HSBC Bank USA, NA, No. 20-CV-4566, 2025 WL 248253, at *6 (E.D.N.Y. Jan. 21, 2025). I am therefore requesting the midpoint of $550.

The hours expended are appropriate as well. I spent 25.3 hours on this case. The work performed in this case included drafting the complaint, opposing the motion to compel arbitration, attending the mediation, and drafting the settlement documents. The fees are therefore appropriate. Accordingly, the Court should approve Plaintiff's attorneys' fees.

Thank you for your attention to the above.

Respectfully Submitted,
---------------------/s/----------------
Michael Taubenfeld

Encl.